Harry B. Anderson, Plaintiff, v. The Fidelity and Casualty Company of New York, Defendant.

(Supreme Court, Albany Trial Term, June, 1917.)

Insurance (accident) — double indemnity — public conveyance — negligence — carriers.

> Where plaintiff was injured while alighting from a taxicab which at the time he and another had the sole and exclusive right to occupy with the chauffeur, he may not recover under a provision of a policy of accident insurance by which a double indemnity was agreed to be paid if the insured received a bodily injury while "on a public conveyance  *  *  *  provided by a common carrier for passenger service."

Action upon a policy of accident insurance.

Mills & Mills, for plaintiff.

Nadal, Jones & Mowton (Charles B. Sullivan and Edwin A. Jones, of counsel), for defendant.

Chester, J.   The plaintiff sustained a bodily injury through accidental means and suffered total disability by reason thereof from October 8, 1915, to April 15, 1916, a period of twenty-seven weeks.   At the time of his injury he had a policy of accident insurance issued by the defendant under the terms of which the defendant agreed to pay him $25 per week for total disability, the result of a bodily injury sustained through accidental means and further agreed to pay a double indemnity " if the bodily injury is sustained by the assured  *  *  *  while in or on a public conveyance (including the platform, steps and running board thereof) provided by a common carrier for passenger service."   The defendant admits its liability under the

policy to the extent of $675. The plaintiff claims that he is entitled to receive double that amount.

The plaintiff was injured while attempting to alight from an automobile or taxicab owned and operated by the Yellow Taxi Service, Inc., in front of the Elk's Club on State street, in the city of Albany. He entered the taxicab with a friend at the corner of State and Pearl streets where the company maintained an office and a regular stand for its taxicabs and where it was awaiting an engagement and directed the chauffeur to take them to the Elk's Club. They were the only persons in the cab other than the chauffeur. It is conceded that the plaintiff during the time that he and his friend occupied the taxicab had the sole and exclusive right to occupy the same alone with the chauffeur until they reached the end of their journey. While the taxicab was so engaged by the plaintiff all other persons were excluded therefrom no matter how many vacant seats there were within. The Yellow Taxi Service, Inc., which operated this taxicab, have a limited number of Ford cars, each bearing a serial number, painted yellow with a taximeter on each, which registered the distance traveled.

They are kept in garages. Some are sent to and stand at various places in the city awaiting applicants for their service, while others await calls at the garages.

The company had the right to refuse the engagement of a taxicab by any objectionable person, because of condition, appearance, disease or for any other proper or legal reason. It employed chauffeurs to operate them and they were sent upon call or by appointment to various places or to or from the railroad station, hotels, public buildings, churches or places of amusement within the city and would go to places beyond the city limits if required. Its rates

were fixed by the owner. None of them were operated on any defined or designated route or between any given or specified points nor did they have any regular schedule for making trips nor any time or route between any given points at any time of the day or night. If all its cars were in use an applicant for taxicab service would be refused and the cab in question if it had not been engaged by the plaintiff at the time he hired it would not have made the trip it did. The amount received as compensation by the company from one who engaged a taxicab depended upon the distance traveled and the time occupied. There is an ordinance of the city of Albany which imposes a penalty of ten dollars upon an owner of any cab or other carriage who should refuse or neglect to convey any person or persons to any place within the north and south bounds of the city and extending from the river three miles west upon being applied to for that purpose and the word " cab " in this ordinance is by the terms thereof to be construed to mean any conveyance used for the carrying and transportation of passengers for hire except cars on the street railroad. The place where the plaintiff was using this cab was within the limits mentioned in the ordinance. One of the purposes for which the Yellow Taxi Service was incorporated was to conduct a general livery business by means of automobiles plying for hire in the streets of any city or village within the state or on the roads or highways of the state generally. Its business was not controlled in any way by the Public Service Commission.

The principal question to be determined on this trial is whether the injuries to the plaintiff were sustained by him while he was " in or on a public conveyance * * * provided by a common carrier for passenger service " within the meaning of this language used in

the policy issued by the defendant and held by the plaintiff.

Under the authorities a taxicab, like a hack or a liveryman's carriage, may be a " public conveyance " at one time and at another a private conveyance. So too a common carrier at one moment may be a private carrier. at another time when the circumstances are changed.

The distinction between a public or common carrier of passengers and a special or private carrier of the same is that it is the duty of the former to receive all who apply for passage, so long as there is room and no legal excuse for refusing while such duty does not rest upon the latter. 10 Corpus Juris, 607, " Carriers," and cases cited.

A common carrier is bound to exercise as high a degree of care, skill and diligence in receiving a passenger, conveying him to his destination and setting him down safely, as the means of conveyance employed and the circumstances of the case will permit. 10 Corpus Juris, 854, and cases cited.

We can readily see in the light of the principle last mentioned, why a company insuring against accidents is willing to insure a person while traveling upon a conveyance provided by a common carrier at one-half the rates which it exacts from a person traveling by a private conveyance where ordinary care is all that is required to be exercised, for it is apparent that the greater the care the less the risk.

That is no doubt true with respect to the policy in question, where double indemnity was agreed to be paid to a person disabled by a common or public carrier and only single indemnity if disabled by a private carrier.

The distinction is plain between the ordinary stage, jitney or auto bus running on defined routes, having

fixed time tables and regular fares, taking all passengers who can pay such fares, to the extent of the capacity of the vehicle, and vehicles operated such as the one in question here was where its owner had the right to let it to whom he pleased at any price that could be agreed upon, for the exclusive use of such person, to go where he directed and to be used by him for such time as suited his purposes. The former are universally held to be common carriers. If the plaintiff here had an action against the Yellow Taxi Service, Inc., claiming damages for the injuries he suffered, could he insist that the liability of such company should be measured by its failure to exercise the highest degree of skill and care which human foresight could devise or would its liability depend upon the want of reasonable or ordinary care? No case has been called to my attention where under similar circumstances, the higher degree of care has been held to be the rule which must govern. In my opinion if the plaintiff was free from fault, the liability of the company would depend upon its failure to exercise ordinary care.

So far as I am advised, however, the exact question which is presented here has never been determined, although a somewhat similar case was decided without an opinion by the Supreme Court of Tennessee (*Darnell* v. *Fid. & Cas. Co.*, 46 Ins. L. J. 523) where a judgment in favor of the plaintiff under the double indemnity clause of a like policy was reversed.

A recent decision by the Supreme Court of the United States (*Terminal Taxicab Co. Inc.*, v. *Kutz*, 241 U. S. 252) leans strongly in the direction of the rule which I think must govern this case. There it was held that a taxicab company was a common carrier within the meaning of an act of Congress (37 U. S. Stat. at Large, 938, chap. 150, § 8) and hence subject to

the jurisdiction of the public utilities commission of the District of Columbia as a " public utility " in respect to its exercise of its exclusive right under lease from the Washington Terminal Company, the owner of the Union Railway Station there, to solicit livery and taxicab business from persons passing to or from trains, and of its exclusive right under contracts with certain hotels to solicit taxicab business from guests, but that that part of its business which consists in furnishing automobiles from its central garage on individual orders cannot be regarded as a " public utility " and therefore the rates charged for such service are not open to inquiry by the public utilities commission.

The first branch of this decision holding a portion of the business of the taxicab company to be a " public utility " was based on the idea that it had the exclusive right to solicit business from *all persons* passing to and from trains in the Union Station with the agreement on its part to provide a service sufficient to accommodate persons using the station and therefore that it was " an agency for public use for the conveyance of persons * * * within the District of Columbia, for hire " within the meaning of that language used in the act.

I cannot conceive that the last branch of the decision holding the other portion of the business of the taxicab company not to be a " public utility " would have been any different if the individual desiring the service of an automobile or taxicab had ordered one for his private use at a public stand maintained by the company in one of the streets of the city rather than at a garage where the vehicles were kept, for in either event it would be subject to his direction and for his exclusive use under the terms of his special contract with the company.

It remains to be considered whether the ordinance of the city of Albany above referred to is effective to make the Yellow Taxi Service a common carrier. That ordinance simply required the payment of a license fee and imposed a *penalty* upon the owner of a cab used for carrying passengers for hire for a refusal or neglect to do so, but that in nowise affected the question of any *damages* that a person might suffer by reason of such refusal or neglect. It is stipulated in this case in substance that the Yellow Taxi Service could refuse to carry in its taxicabs any one not acceptable and that when one was engaged by a person he had the exclusive right to its use during the engagement; that he could exclude any one from it, except upon his invitation, and that the chauffeur had no right at such times to admit any other person thereto. Under this stipulation, it is in effect admitted that notwithstanding the ordinance the owner of the taxicab or his chauffeur could refuse, under the circumstances stated, to take on passengers without incurring any penalty. Nor does the ordinance attempt to impose the obligation upon the company of carrying any or all of the public who should apply for passage in its cabs but assumes only to impose a penalty for a refusal or neglect in this respect.

But even if the taxicabs of the Yellow Taxi Service could under any circumstances be regarded as " public conveyances * * * provided by a common carrier " the moment the plaintiff made a special contract to have the exclusive right to the use of this taxicab to carry him to his destination, the conditions changed and during the time it was in his service it was simply a private carrier for hire (*Dorr* v. *New Jersey Steam Nav. Co.,* 11 N. Y. 485, 493) the same as if he had gone to a livery stable and hired a carriage for his use or had called a hack standing on the street to serve him.

27

I think therefore that the plaintiff's injuries were not sustained while " on a public conveyance * * * provided by a common carrier for passenger service " within the meaning of that language used in the policy and that judgment must be directed for the plaintiff for $675, with interest thereon from the date when made payable under the terms of the policy.

Judgment accordingly.