HARRY B. ANDERSON, Appellant, v. THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, Respondent.

Third Department, May 8, 1918.

**Insurance — accident insurance covering injury while riding in a public conveyance provided by a common carrier — when incorporated taxicab company is common carrier and cabs are public conveyances — construction of ambiguous insurance policy.**

An incorporated taxicab company operating vehicles to convey persons in and about a city for hire and which pays a municipal license for the privilege of doing business and which, by municipal ordinance, is required to accept passengers is a common carrier within the terms of an accident insurance policy providing double liability for injuries while in or on a public conveyance provided by a common carrier for passenger service. Moreover, a taxicab used by such company to convey passengers is a public conveyance within the meaning of said policy.

Hence, a person who engaged passage in a taxicab of said company and was injured while alighting from the cab is entitled to recover double damages under said policy of insurance.

The fact that the insured, while riding in the cab, was entitled to its exclusive use and no other persons could be admitted did not deprive the cab of its character as a public conveyance.

Where language in such insurance policy is ambiguous the doubts should be resolved in favor of the insured.

H. T. KELLOGG, J., dissented.

APPEAL by the plaintiff, Harry B. Anderson, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Albany on the 4th day of December, 1917, upon the decision of the court, the facts having been stipulated.

*Mills & Mills* [*Borden H. Mills* of counsel], for the appellant.

*Nadal, Jones & Mowton* [*Edwin A. Jones* and *Ainsworth, Carlisle & Sullivan* of counsel], for the respondent.

COCHRANE, J.:

The plaintiff, standing at the corner of State and Pearl streets in Albany, called one of the taxicabs owned and operated by the Yellow Taxi Service, Inc., a domestic corporation, to convey him and his friend to the Elks' Club. The journey was accomplished and while alighting from the taxicab the plaintiff received an accidental injury. He had an accident

policy with the defendant which policy provided for double liability if the injury was sustained by the assured "while in or on a public conveyance (including the platform, steps, and running-board thereof) provided by a common carrier for passenger service." The defendant admits liability for $675, for which amount judgment has been rendered against it in favor of the plaintiff. The plaintiff contends he is entitled to recover double that amount under the provision in the policy above quoted. The question for determination, therefore, is, whether the accident to the plaintiff occurred on a public conveyance provided by a common carrier for passenger service within the meaning of the policy. This question subdivides itself into two parts, viz., *first*, was the Yellow Taxi Service, Inc., a common carrier, and *second*, was the taxicab which it provided for the plaintiff a public conveyance within the meaning of the policy?

The Yellow Taxi Service, Inc., owns and operates various taxicabs for the purpose of conveying persons in and about the city of Albany. These taxicabs are kept in garages. Some are sent to and stand at various places in the city awaiting applicants for their service, while others await calls at the garage. They are similar to the ordinary Ford car, except that the bodies are painted yellow, and each car bears a serial number and has a taximeter which registers the distance traveled. They are operated by chauffeurs in the employ of the owner. They are sent upon call or by appointment to various places, or from one residence to another, or to and from a railroad station, hotels, public buildings, churches, or places of amusement, and go to places beyond the city limits if necessary and required. The rates for all services were fixed by the owner. There is in effect an ordinance of the city of Albany, the validity of which is unquestioned, which provides that a penalty of ten dollars shall be imposed upon the owner or driver of any hackney coach, cab or other carriage, who shall "refuse or neglect to convey any person or persons to any place within the north and south bounds of the city, and extending from the river three miles west, upon being applied to for that purpose." This ordinance further provides that it shall apply to any conveyance used for the carrying and transportation of passengers for hire, except cars on the street

railroad, and that all taxicabs shall pay a license fee of five dollars. This license fee had been paid by the owner of the taxicab in question. In many opinions and by many text-book writers common carriers have been defined. It is not an essential characteristic of a common carrier that it shall operate between definite termini or shall follow a designated line of travel or shall observe a specific schedule for making trips.

" According to all the authorities, the essential character-istics of the common carrier are that he holds himself out as such to the world; that he undertakes generally, and for all persons indifferently, to carry goods and deliver them for hire."

" The common carrier must regularly undertake to carry goods for all who choose to employ him, and to carry all passengers who apply for carriage. It is this that distinguishes the common carrier from the private or special carrier." (Van Zile Bailments & Carriers [2d ed.], chap. 2, § 407.)

" Public or common carriers of passengers are generally held to include all those who, as a business, carry passengers by means of stagecoach, omnibus, public hack, or taxicab, jitney, steamboat or ferry." (10 C. J. 607.) A livery-stable keeper, however, is not ordinarily a common carrier. (Id. 608.)

" Public motor vehicles such as sight-seeing cars, taxicabs and others, which are employed in carrying all persons apply-ing for transportation, come within the definition that a common carrier of passengers is one who undertakes for hire to carry all persons who may apply for carriage." (Huddy Automobiles [4th ed.], § 39.)

" The most important common carriers of modern times are railway and steamboat companies, street railways (whether sur-face, elevated or underground) and the proprietors of omnibuses, hacks and taxicabs." (Dobie Bailments & Carriers, 519.)

In *Van Hoefen* v. *Columbia Taxicab Company* (179 Mo. App. 591) it is said (at p. 599): " It appears defendant owned and operated forty taxicabs in the city of St. Louis, and that it maintained stands or stations at prominent places throughout the city where transportation might be had in such taxicabs, or they might be called into service where required. Defendant followed the business of transporting persons for hire from one part of the city to another and held itself out to serve one and all who should apply to it

for transportation upon the payment of the fares agreed upon or usually charged. This being true, it is, of course, a public or common carrier of passengers and through entering that calling assumed all of the obligations incident thereto."

The Yellow Taxi Service, Inc., was under the duty and obligation to convey all persons within the city of Albany who applied to it for such purpose. It held itself out as ready and willing to serve all alike and solicited the patronage of the public accordingly. This follows from the fact that the taxicabs stood at various places in the city awaiting applicants for service. But more than this, the ordinance above mentioned imposed the legal duty upon it to perform such service. A license fee was exacted of each taxicab whereby the owner thereof acquired certain privileges not otherwise permissible, and by virtue of the same ordinance the owner came under the duty of conveying every person who so desired practically within the limits of the city. It could not if it desired arbitrarily refuse transportation to the plaintiff or any other person who was willing to pay its lawful and reasonable charge. It is stipulated that the owner could refuse the engagement of the taxicab " by any objectionable person because of conditions, appearances, disease, or for any other proper or legal reason." But that gives the owner no greater discretion or power than is possessed by any common carrier. The meaning of that is that the owner of the taxicab had a reasonable and not an unreasonable and arbitrary discretion in respect to the passenger. The learned trial justice was of the opinion that the effect of the ordinance was overcome because the occupant of a taxicab had the exclusive right to its use, and that the chauffeur thereof had no right at such time to admit any other person thereto. (See 100 Misc. Rep. 411.) It is quite true that while a taxicab was occupied, no other person could be admitted thereto without the consent of the occupant, but that did not relieve the owner from the duty or necessity of providing another taxicab for any person desiring the same. It seems to me that the owner of the taxicab in which the plaintiff was riding was a common carrier and the next question presented is, was the taxicab a public conveyance within the meaning of the policy?

It is urged that because the plaintiff was entitled to its

exclusive use and that no other person could be admitted thereto, it lost its character of a public conveyance and became a private conveyance. I think this is too narrow and restricted a view to take of the situation. It is true that for the time being a portion of the public was excluded from its use. It could not be used by all of the public at the same time, but it was even then in use by that portion of the public represented by the plaintiff and his companion. But in a larger way it remained a public conveyance in the sense that it was offered to the public; was designed to be used by the public; that the public were solicited to use it; and I do not think it lost its character of a public conveyance merely because for the time being a portion of the public was not at liberty to use it. If there is doubt or ambiguity in regard to the meaning of the expression " public conveyance," such doubt or ambiguity has been occasioned by the defendant. The language used is that which the defendant has employed, and doubts and ambiguities should be resolved in favor of the plaintiff. (*Kratzenstein* v. *Western Assurance Co.*, 116 N. Y. 54; *Marshall* v. *Commercial Travelers' Mutual Accident Assn.* 170 id. 434; *Schumacher* v. *Great Eastern Casualty & Indemnity Co.*, 197 id. 58.)

In *Primrose* v. *Casualty Company* (232 Penn. St. 210) the Supreme Court of Pennsylvania had under consideration a provision in a policy of insurance under which plaintiff was seeking double compensation, which provision was as follows: " If those injuries are received while riding as a passenger in or on a public conveyance, provided for passenger service." Primrose sustained injuries while riding in an automobile owned and operated by the Pennsylvania Taximeter Cab Company under conditions and circumstances not distinguishable from those which existed in the present case. The question was whether the automobile in which he was riding was a " public conveyance " within the meaning of the policy. The court answered the question in the affirmative, saying: "All conveyances are either for public or private use. The automobile in the case at bar was not one for merely private use. It belonged to a company which, as already stated, was engaged in the business of hiring automobiles for general public use. The use of no one of its

machines was limited to any particular person, but any one able to pay the price for the privilege of riding in it, while it was under the control of and being operated by one of the company's employees, could do so. In some cases a fare per head was charged for the use of the machine for a stipulated time, or for a specified journey; in other instances there was a charge for the use of the car of so much by the hour, and, under this arrangement, the deceased and his friends hired the car in which they were riding." That case is an authority for the plaintiff on the proposition that the taxicab in question was a " public conveyance."

*Darnell* v. *Fidelity & Casualty Company* (46 Ins. L. J. 523), decided in Tennessee, is cited as an authority in favor of the defendant. No opinion was delivered in that case and it is impossible to determine the theory on which the court proceeded. But, as appears from the record thereof submitted to this court by the respondent, the accident happened in a village in this State. The automobile company operated five automobiles of the ordinary type, and employed only two men beside its manager. It was largely optional or discretionary with the company whether or not it would respond to a call for service. No ordinance of the village required it to act or imposed any duty or obligation upon it, and it seems to have imposed none on itself by its method of operation, or in holding itself out to the public or in its method of soliciting business. That business was in reality an ordinary livery-stable business except that the vehicles were automobiles instead of horse-drawn vehicles. The distinction between that case and this is a broad one, and it may well have been held that the company operating the automobiles was not a common carrier.

*Terminal Taxicab Co.* v. *District of Columbia* (241 U. S. 252) is supposed to throw doubt on the plaintiff's claim herein. There the court was considering the effect of a statute which defined a public utility as embracing every common carrier, which phrase in turn was declared by the statute to include every corporation " controlling, or managing any agency or agencies for public use for the conveyance of persons or property within the District of Columbia for hire." (37 U. S. Stat. at Large, 938, chap. 150; Id. 974, 975, § 8, ¶ 1.) It was held that so far

as the plaintiff conveyed passengers to and from the railroad station and served hotel guests, it was " ' an agency for public use for the conveyance of persons,' etc.; and none the less that it only conveys one group of customers in one vehicle." To that extent the case favors the plaintiff. It was further held that so far as the plaintiff furnished automobiles from its central garage on orders, it was not an agency for public use within the meaning of that statute. It was stated, however, that the company " asserts the right to refuse the service " and that the bargains " probably have not quite the mechanical fixity of charges that attends the use of taxicabs from the station and hotels." The reasoning of the court on this branch of the case proceeds on the theory that the service of the automobiles from the garage stood on the same footing as the service to the public of an ordinary shopkeeper or proprietor of a livery stable. But even in respect to such a condition the court expressed doubt and uses this significant language: " There is no contract with a third person to serve the public generally." In the present case, as we have seen, there is more than a contract obligation on the automobile company to thus serve the public; there is an obligation imposed by the city ordinance. There seems to be nothing in that case which militates against the position of the plaintiff herein.

Nor did the plaintiff make any contract with the automobile company which as to him changed its character as a common carrier. Doubtless he could have done so. (*Dorr* v. *New Jersey Steam Navigation Company*, 11 N. Y. 485, 493.) But the service which the automobile company rendered to the plaintiff differed in no respect from the service which it was rendering to the public generally, and such services were rendered under the same kind of a contract.

I advise that the judgment be modified by increasing the same to $1,350 and interest and costs, and as so modified that it be affirmed.

All concurred, except H. T. KELLOGG, J., dissenting.

Judgment modified by increasing the recovery to $1,350 and interest, and as so modified affirmed, with costs to the appellant.