OLIVE KENT PARK, INC., et al., Plaintiffs, *v.* MOSHASSUCK TRANS-PORTATION Co., Defendant and Third Party Plaintiff. CONBOY TRUCKING CORP., Third Party Defendant.

Supreme Court, Trial Term, New York County, May 26, 1947.

*Jerome G. Greenspan* for plaintiffs.

*George Janow* for defendant and third party plaintiff.

*George F. Rivkins* for third party defendant.

PECORA, J. This action was instituted by plaintiffs against the defendant Moshassuck Transportation Co. to recover the value of certain merchandise consisting of textiles owned by the plaintiffs, and which had been turned over to Moshassuck Transportation Co. for delivery to certain designated consignees in the city of New York. The Moshassuck Transportation Co., as third party plaintiff, brought in the Conboy Trucking Corp., as a third party defendant. In its complaint against the third party defendant, the Moshassuck Transportation Co. seeks to fasten upon it whatever liability the Moshassuck Transportation Co. may be found to bear to the shippers.

It appears without dispute that on August 13, 1946, the Conboy corporation received from the Moshassuck company 195 pieces of goods which were the property of the plaintiffs and other shippers. These goods were turned over to the Conboy corporation for delivery to certain designated consignees within the borough of Manhattan, city of New York. It is conceded that the value of these goods was $35,337.80, although the Moshassuck company is seeking recovery herein for only $34,346.43.

The goods were never delivered to the consignees, for the reason that on the date mentioned the truck belonging to the Conboy corporation and manned by two of its employees, which contained the goods in question, was hijacked in broad daylight at or near the corner of Madison Avenue and 104th Street in this borough, and the goods were stolen and have not since been recovered. It is not alleged that there was any negligence whatsoever on the part of the Conboy Trucking Corp. or any of its employees in connection with the loss of the goods.

It is conceded that the plaintiffs are entitled to recover the fair and reasonable value of the goods from the defendant Moshassuck Transportation Co., in view of the fact that that defendant is a common carrier. The issue fundamentally to be decided now is whether or not the Moshassuck Transportation Co. should have judgment over against the third party defendant, the Conboy Trucking Corp., for the value of the goods. The determination of that issue depends upon whether or not the Conboy Trucking Corp. is a common carrier instead of a contract or private carrier. It is agreed that if the Conboy Trucking Corp. is a common carrier, it is liable to the Moshassuck Transportation Co. for the value of the goods. Otherwise no liability whatever would attach.

Most of the testimony presented to the court related to the manner in which the Conboy corporation conducts its business of transporting goods for hire. The proof shows that the Conboy Trucking Corp. is the outgrowth of a trucking business started in 1896 by the father of George V. Conboy, who is its president. In the year 1931 the business was incorporated in its present form under the laws of this State, and continuously since then George V. Conboy has been its president and active operating head. It owns eleven motor trucks, and at times finds it necessary to rent two or more other trucks. It employs eleven chauffeurs and thirty-seven helpers. It has a terminal at which it receives freight from various fleets of carriers, some of them of an interstate character. It also receives shipments of freight at railroad terminals and piers. Its own terminal, which consists of two- and three-story structures, includes a substantial concrete and steel loading platform. Part of its terminal premises are used for its garage purposes, but in addition it rents space in other garages for its trucks.

The goods handled by the Conboy corporation are obtained principally from textile mills scattered throughout New England States. There are about one hundred such mills, and the testimony shows that it handles the goods of from 60% to 70% of those mills. Its trucking business is confined almost exclusively to the borough of Manhattan, for what is known as store-to-store delivery to consignees, most of whom are located within the area that has come to be known as the garment center. The Conboy corporation, in addition, has various other customers whom it serves within the city of New York. Some of these other customers are interstate common carriers, operating from New England, the West and the South.

The Conboy corporation, according to the evidence, does not advertise its business in the usual manner, that is to say, by the printed word. However, it has from time to time obtained customers by direct solicitation, in the form either of correspondence or personal visit. It also resorts to the telephone in its solicitation of business. It appears that in its own field of operations it has about six competitors. None of its competitors resorts to advertising by use of the printed word.

The Conboy corporation, during the recent war years, had developed its business to the point where it taxed all of its available facilities. The testimony further shows that throughout the years of its existence, it has refused the business of prospective shippers on only four occasions.

In addition to conducting a trucking and transportation business, the Conboy corporation also offers storage facilities, but the major portion of its storage business is done with its shipping customers. It does not issue the usual bills of lading or any shipping receipts of its own. It does, however, use a delivery receipt issued by the Moshassuck Transportation Co. in duplicate. For about twenty years past the Conboy corporation has specialized in the transportation of textiles. Among the customers of the Conboy corporation are forty-one textile manufacturers, thirteen jobbers, fifty-three mills, sixty-three selling agents, one factor and the United States Treasury Department. Mr. Conboy testified that he was a member of the New York Motor Carriers Association, which is an organization consisting of persons who are engaged in the transportation of goods in the city of New York. He also testified that his company would take on the business of more customers if its present facilities permitted it to do so.

It was further shown that the charges made by the Conboy corporation are fairly uniform in character, the variations depending principally upon the nature of the goods transported, their volume and the localities where the deliveries are to be made.

Does the manner in which the Conboy corporation operates its transportation business constitute it a common carrier?

The Public Service Law of this State, in paragraph (b) of subdivision 30 of section 2 of article 1, provides: "The term 'common carrier by motor vehicle' means any person who or which undertakes, whether directly or by lease or any other arrangement, to transport property, or any class or classes of property, for the general public by motor vehicle for compensation, whether over regular or irregular routes, or within a defined territory, including such motor vehicle operations of carriers by railroad or water, and of express or forwarding companies to the extent they are not otherwise included within the provisions of parts one and two of the interstate commerce act of the United States and the laws of this state."

The cases contain many definitions of a common carrier, but while their phraseology differs their substance does not. In the case of *Jackson A. Iron Works* v. *Hurlbut* (158 N. Y. 34) a common carrier is defined as follows (p. 38): "A common carrier is one who, by virtue of his calling, undertakes, for compensation, to transport personal property from one place to another for all such as may choose to employ him, and everyone who undertakes to carry for compensation the goods of all

persons indifferently, is, as to liability, to be deemed a common carrier." At page 37 the court further said: "Truckmen, wagoners, cartmen and porters who undertake to carry goods for hire as a common employment in a city or from one town to another, are common carriers."

In the case of *Heuman* v. *Powers Co.* (175 App. Div. 627 [1st Dept.]) the court said: "The defendant is a general truckman transporting goods for hire under special contracts. He was, therefore, a common carrier."

An interesting case is *Stevenson Co.* v. *Hartman* (231 N. Y. 378). There the defendant conducted a trucking business for the delivery of packages of merchandise in the borough of Manhattan. He maintained a stand at 15th Street and Sixth Avenue. His customers were located in that vicinity, and were engaged in various kinds of business activities. The defendant there asserted that he delivered goods only within a circumscribed area in the city, that he followed no special routes, and transported all the goods which his facilities enabled him to carry. He further claimed that he made his own choice of customers, and that his transportation charges were arrived at as a result of individual bargaining with customers. He was nevertheless held to be a common carrier. In its opinion the court said (p. 381): " * * * it seems to us perfectly clear that the position thus described was that of a common carrier of goods. Defendant was either a private carrier, carrying occasionally for some particular person under some particular arrangement or he was a common carrier engaged in the general business of carrying goods generally for those who desired his services. It seems plain that his case is not fitted by the former description but that he comes within the latter definition."

The characteristics of a common carrier, gathered from the decisions in many jurisdictions, are well summarized in subdivision b of section 3 of Carriers, in 13 Corpus Juris Secundum, in the following words: "The test by which it is determined whether a party is a common carrier of goods is: (1) He must be engaged in the business of carrying goods for others as a public employment, and must hold himself out as ready to engage in the transportation of goods for persons generally as a business, and not as a casual occupation. (2) He must undertake to carry goods of the kind to which his business is confined. (3) He must undertake to carry by the methods by which his business is conducted, and over his established routes. (4) The transportation must be for hire. The distinctive characteristics of a common carrier are those stated in the first text set out

above, viz: That he holds himself out as ready to engage in the transportation of goods for hire as a public employment, and not as a casual occupation, and that he undertakes to carry for all persons indifferently, within the limits of his capacity and the sphere of the business required of him   *   *   *."

It has been held that a transporter may confine its business to a special type or class of merchandise and still be a common carrier. A case in point is *United States* v. *Carolina Carriers Corp.* (315 U. S. 475) where the court said at page 483: "It is plain that a carrier's holding out and actual performance may be limited to a few articles only. That is to say, he may be a common carrier only of a restricted number of commodities."

It has also been held that the absence of regular schedules of operation or of definite terminals does not necessarily take a carrier out of the classification of a common carrier. (*Anderson* v. *Fidelity & Casualty Co.*, 228 N. Y. 475.)

In *Jackson A. Iron Works* v. *Hurlbut* (158 N. Y. 34, *supra*) the court said (pp. 37–38): "The circumstance that the defendants had no regular tariff of charges for their work, but that a special price was fixed by agreement, does not change the relation. The necessity for a different charge in each case arises, of course, out of the difference in labor in handling articles of great bulk. The charge in each case may be proportioned to the risk assumed and commensurate with the carrier's responsibility as such."

Nor is it necessary for a carrier to serve all of the public in order to warrant its classification as a common carrier. This was made clear in the often-quoted case of *Terminal Cab Co.* v. *Kutz* (241 U. S. 252, 255), where the court said: "No carrier serves all the public. His customers are limited by place, requirements, ability to pay and other facts." The public does not mean everybody all the time.

In the very recent case of *Surface Transp. Corp.* v. *Reservoir Bus Lines* (271 App. Div. 556 [1st Dept]), the defendant carried passengers consisting only of the tenants of certain landlords with whom it had contracted for such service. The learned court, however, held that the defendant was a common carrier.

The Conboy corporation, in support of its contention that it is a private or contract carrier instead of a common carrier, relies most strongly upon the case of *Matter of Motor Haulage Co.* v. *Maltbie* (293 N. Y. 338). In that case the petitioner, Motor Haulage Company, had been classified by the Public Service Commission as a common carrier. Upon a review, that determination was upheld by the Appellate Division. (266 App. Div.

1040.) Upon appeal to the Court of Appeals, however, that learned court, by a division of four to three, reversed the Appellate Division, and held that the petitioner was not a common carrier. A careful study of that case shows that the holding arrived at by a bare majority of the court, was based upon certain peculiar facts which are elaborately set forth in the majority opinion, relating to the manner and method of the conduct of the petitioner's business. The distinguishing features of that carrier's activities which influenced the court's decision, are not evidenced in the manner in which the Conboy corporation operated its business.

The evidence before me satisfies me that the Conboy Trucking Corp., viewed in the light of the authorities, is a common carrier. This conclusion constrains me to grant the motion of the Moshassuck Transportation Co. for judgment against the Conboy Trucking Corp. for the sum of $34,346.43, with interest and costs. At the conclusion of the trial the court granted the motion of the plaintiffs for judgment against the Moshassuck Transportation Co. for the sum of $19,658.02. The difference between that amount and $34,346.43, as already noted, represents the value of goods belonging to persons other than the plaintiffs which had been turned over on August 13, 1946, by the Moshassuck Transportation Co. to the Conboy corporation for delivery, and which were included in the goods that were lost as a result of the hijacking already referred to.

Settle judgment in accordance with this statement of the court's decision.