Maurice Wahl, J.
Plaintiff, a furrier, claiming to have been lawfully in possession of a mink coat, of the property of one Ruth Rathbun, sues as bailee to recover the reasonable value of the coat, charging defendant, in its amended complaint, (a) in the first cause of action with negligence on the theory that defendant was hired to deliver the aforesaid mink coat to the *198 lawful owner, and wMle said coat was in defendant’s custody it was lost through the sole and exclusive negligence of defendant; and (b) in the second cause of action upon the theory that the defendant was a common carrier of merchandise for hire.
Defendant, in answering the first cause of action, denies generally the allegations of the complaint, except that it admits that, in consideration of the charges paid to it, it undertook to transport and deliver a package delivered to it by plaintiff for delivery, and for its answer to the second cause of action generally denies all of the allegations thereof.
As a separate and partial defense, defendant claims that on or about April 23, 1953 plaintiff and defendant entered into a contract under which defendant agreed to deliver errands and collect charges for the plaintiff, and further agreed that defendant ’s liability in connection with such delivery would be limited to an amount not in excess of $100. The contract defendant relies upon reads:
Since it is your practice to call for messengers for the purpose of delivering errands and collecting amounts for you, I believe that it is only fair to tell you that, while we will make every possible effort to see that you are promptly and honestly served, there is no way in which we could undertake to assume liability for any amount in excess of $100.00 should any errand unfortunately be lost.
As you can readily appreciate, it is our earnest desire to give the public a prompt and dependable service, and you may be sure that every effort will be extended to see that you are correctly served, but it is necessary that we limit the amount of our liability.
I believe that it is in order to make this explanation to you so that you can understand exactly the conditions under which the service can be given. Please be assured that we appreciate your business and will do everything possible to earn your continued patronage.
Tours truly,
/s/ W. E. Anderson Manager
Receipt is acknowledged.
J. De Leo & Co., Isro.
/s/ D. M. Klein
The evidence at the trial discloses that through a call box at plaintiff’s premises, it sent for someone in defendant’s employ to call at its premises. In response to the call, defendant dispatched one of its employees, Bamirez, who on the date in question signed a receipt No. 17,777, dated December 23, 1954, that he received from the plaintiff for Western Union, in good order, one package for delivery to ‘1 Miss Buth Bathbun, 45-54 — 41st Street, Sunnyside, N. Y.”.
Defendant’s éxamination before trial, offered as defendant’s Exhibit B in substance, indicates that defendant, in addition to *199 its telegraph and communication business, also performs and operates a delivery and messenger service, at a uniform rate of charge in the metropolitan, New York area, and which service is also run on a nationwide basis, for which a fixed charge is made on time and distance, with variations for multiple packages or multiple stops in the same general area of delivery. The packages are limited to such as can be physically carried by a messenger, and only such packages as may be legally delivered without a special license therefor are accepted by the defendant for such delivery. These services are advertised in publications, newspaper media, telephone directories and television programs. The defendant has a number of solicitors attempting .to get this type of business for it.
Defendant’s Exhibit C in evidence, consisting of the examination before trial of Ramirez, the messenger in question, indicates that he picked up the package in question at the plaintiff’s place of business after having been sent there by his supervisor, and Mr. David Klein, representing plaintiff, told the messenger to deliver it to the party whose name and address appeared on the label attached to the carton and to get a receipt and return it to him. Ramirez then signed the receipt for the plaintiff and returned to the Western Union office where he had to pick up a yellow receipt or errand service ticket furnished by defendant. This was given to him by his supervisor, and Ramirez then departed for his ultimate destination in Sunnyside, N. Y., with the errand ticket.
Ramirez testified that when he reached the Lowery Street station in Sunnyside, he did not know how far his ultimate destination was from the station, but he thought it was only a block or two away. As he was walking on the street there was a man walking in the same direction, and Ramirez asked this man if he could direct him to the address. The stranger told him that he was the person he was looking for and, in substance, that he was expecting this delivery of a fur coat for his wife. He and Ramirez proceeded to a candy store where this stranger apparently made some telephone calls, and thereafter this stranger told Ramirez that the receipt therefor would be signed by his wife at another address in Sunnyside. As Ramirez and the stranger were leaving the candy store, and prior to the time that Ramirez was to go to the address the stranger had given him for the purposes of getting the receipt signed, the stranger grabbed the package and ran. Ramirez ran after him, but having a physical disability to one of his legs, the stranger outdistanced him and Ramirez lost him. Ramirez then went to the alleged address where the alleged wife was supposed to sign a *200 receipt, found that it was fictitious, then returned to Miss Bath-bun’s apartment at the address originally listed on the package, asked her whether the package or coat had been delivered to her, and when she said no, he told her what had happened, and Bamirez then reported the incident to his office. Later that day the manager of the office and Bamirez reported the incident and occurrence to the 108th Squad Detectives of the New York City Police Department. The coat has not been recovered.
There is no substantial dispute as to the factual testimony. There are issues of law that have been presented.
Plaintiff urges that defendant is a common carrier for hire of merchandise. On this score, the controlling authorities support plaintiff’s position (Sanford v. American Dist. Tel. Co., 13 Misc. 88; Robinson v. Cornish, 13 N. Y. S. 577; Jackson Architectural Iron Works v. Hurlburt, 15 Misc. 93, affd. 158 N. Y. 34; Anderson v. Fidelity & Cas. Co. of N. Y., 183 App. Div. 170, affd. 228 N. Y. 475; Stevenson & Co. v. Hartman, 231 N. Y. 378, 381; Olive Kent Park v. Moshassuck Transp. Co., 189 Misc. 864, affd. 274 App. Div. 765).
Examination of the contract between the parties (Defendant ’s Exhibit A) states no rates that are to be charged. Examination of defendant’s manager (Defendant’s Exhibit B) indicates that the rate structure is on time and distance within the metropolitan area and that is a uniform rate for each of the zones within the city limits regardless of the customer, and that all customers are charged the same rate for the same distance or same period of time, with only two variations, (1) for volume, and (2) for additional stops on the same route of delivery.
It is a rule of law that unless the common carrier offers the customer a choice of rates or choice of evaluation or declared value with a variance in the rates, any limitation of the measure of damages is invalid (Burke v. Union Pacific R. R. Co., 226 N. Y. 534; Kilthau v. International Mercantile Marine Co., 245 N. Y. 361; Straus & Co. v. Canadian Pacific Ry. Co., 254 N. Y. 407).
The evidence here shows that no choice of rates was offered plaintiff, but on the contrary the foregoing referred to testimony shows that the rates were uniform.
None of defendant’s cited authorities is convincing, and are all substantially from foreign jurisdictions. Whatever the law may be there does not impress this court, when compared to our own authorities cited above. Based upon such authorities, this court holds the defendant to be a common carrier for hire of merchandise, under the circumstances of this case.
*201 In any event, defendant is a bailee for hire, and the burden is cast upon it under the prevailing authorities to come forward with evidence showing that the loss occurred through no fault of defendant and that it took reasonable steps to forestall any such loss. In this case defendant has merely relied upon the evidence of its messenger, Ramirez, which does not convince the court that the independent act of the third person, perhaps a thief, could not have been avoided by the exercise of reasonable common sense by Ramirez. Furthermore, at no time was Ramirez the plaintiff’s agent. He was a general employee of defendant under its general jurisdiction and supervisory powers, subject only to such directions as to the person and place where he was to make the delivery, and that was in furtherance of his own employer’s general supervision of Ramirez in offering such service to the plaintiff (McNamara v. Leipzig, 227 N. Y. 291; Charles v. Barrett, 233 N. Y. 127).
The relationship of respondeat superior clearly existed between Ramirez and the defendant, and his acts and omissions in the course of his employment and in the furtherance of defendant’s business are chargeable to defendant.
Finally, defendant urges, if it has liability in this case, that the measure of damages is limited to the sum of $100.
As the court has heretofore pointed out, it is of the opinion that the limitation of measure of damages is invalid if defendant is a common carrier, as no choice of rates was offered. If defendant is liable as a bailee, then unless the contract clearly, in running reading language, exempts defendant from its own negligence, the limitation of the measure of damages cannot be availed to exculpate the defendant from its own negligence (Howard v. Handler Bros. & Winell, Inc., 279 App. Div. 72, affd. 303 N. Y. 990; Rappaport v. Phil Gottlieb-Sattler, Inc., 280 App. Div. 424, affd. 305 N. Y. 594; Abend v. Haberman, 281 App. Div. 262).
Whatever hypothesis be assumed to cast liability upon defendant, i.e., common carrier or bailee for hire, the limitation of the measure of damages has no impact.
No real challenge has been made, and in the court’s opinion none can be made to the maintenance of this suit by plaintiff as a bailee lawfully in possession.
The evidence before the court by Mr. Klein, who has been qualified, is that the value of the mink coat was $3,500, though the complaint alleged the value was $5,350. No contradictory or opposing evidence of value was adduced by the defendant. Therefore the court finds on the law and on the facts that the plaintiff is entitled to a judgment in the sum of $3,500.
*202 The parties hereto stipulated in open court to relinquish their right to a trial by jury and waived findings of fact and conclusions of law.
Ten days’ stay, 30 days to make a case. The foregoing constitutes the court’s opinion in conformity with section 440 of the Civil Practice Act.