HARRY B. ANDERSON, Respondent, *v.* THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, Appellant.

Insurance (accident) — common carriers — taxicabs — provision that insured shall receive double indemnity if injured while in or on a public conveyance — when taxicab a public conveyance within purview of the double indemnity provision.

1. A common carrier of goods is one who, by virtue of his calling, undertakes, for compensation, to transport personal property from one place to another for all who may choose to employ him, and every one who undertakes to carry for compensation all persons indifferently is, as to liability, to be deemed a common carrier.

2. This action is upon a policy of accident insurance issued by the defendant to the plaintiff. By article VII of the policy it is provided that the amounts specified to be paid by other articles shall be doubled if the bodily injury is sustained by the assured " while in or on a

public conveyance (including the platform, steps and running-board thereof) provided by a common carrier for passenger service." Plaintiff engaged a cab standing in front of the office of a taxicab company in the city of Albany, which cab was operated by a chauffeur employed by the company. The plaintiff entered the cab, accompanied by a friend, and gave the chauffeur the direction to take them to a destination in the city, and as the plaintiff attempted to alight at his destination he stumbled and fell and sustained a fracture to the right patella or knee cap and was seriously injured. The cab company sent its taxicabs, equipped with taximeters, on the streets of Albany under the control of their chauffeurs to wait at stands or when traveling upon the streets and unemployed to transport any applicant for their service. A city ordinance which clearly applies to them penalizes both the chauffeur and the owner for any refusal to accept any proper applicant. Such a conveyance, stationed in a public place awaiting and accepting, for carriage, subject to reasonable regulations, any member of the public who desired it, and upon terms apparently uniform and common to all, seems clearly to be a public conveyance. It is a public conveyance because indiscriminately it conveys the public. It is not private because its use is not limited to certain persons and particular occasions or governed by special terms. (*Terminal Taxicab Co., Inc.*, v. *Dist. of Columbia*, 241 U. S. 252, 253, followed.)

3. The taxicab which was used by the plaintiff was stationed upon a public street and in a public place intended to serve and serving indiscriminately whomsoever of the public might desire it under common conditions and upon common rates of fare. Its status as a " public " conveyance is not impaired by the fact that it did not at all times keep the same number of cabs for public service, that it did not receive for carriage persons subject to certain objections, that it fixed its own rates of fare, that it had no fixed routes, or by the observance of a custom or regulation that when a taxicab has been engaged by one member or group of members of the public no other person was received for carriage even though room was still left in the conveyance, until the first trip had been completed.

4. None of the special conditions and limitations which have been mentioned destroy or impair the fundamental and substantial character of the operator of the taxicab in question. Subject to these particular features, which regulated without destroying its service, the owner of this cab was engaged in indiscriminately carrying such members of the public as might apply on common terms, and it came within the definition of a common carrier.

*Anderson* v. *Fidelity & Casualty Co.*, 183 App. Div. 170, affirmed.

(Argued March 3, 1920; decided April 20, 1920.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered May 10, 1918, modifying and affirming as modified a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury, by increasing the amount of the recovery.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edwin A. Jones* and *Charles B. Sullivan* for appellant. When respondent was injured, met with his accident, this taxicab was not a public conveyance, was not provided by a common carrier, and was not then a public conveyance for passenger service. The owner was not a common carrier. (*Darnell* v. *F. & C. Co.*, 46 Ins. L. J. 523; *Anderson* v. *F. & C. Co.*, 100 Misc. Rep. 411; *Terminal Taxicab Co.* v. *Kutz*, 241 U. S. 252; *Dorr* v. *N. J. St. Nav. Co.*, 11 N. Y. 485; *Lough* v. *Outerbridge*, 143 N. Y. 271; *N. Y. C. & H. R. R. R. Co.* v. *Sheeley*, 27 N. Y. Supp. 185; *N. Y. C. & H. R. R. R. Co.* v. *Flynn*, 74 Hun, 124; *Brown* v. *N. Y. C. & H. R. R. R. Co.*, 75 Hun, 358; *Public Service Comm.* v. *Booth*, 170 App. Div. 590; *Smith* v. *O'Brien*, 46 Misc. Rep. 325; *Piedmont Mfg. Co.* v. *C. & G. R. R. Co.*, 19 S. C. 353; *L. S. & M. S. Ry. Co.* v. *Perkins*, 25 Mich. 329; *McGregor* v. *Gill*, 86 S. W. Rep. 318; *N. & C. R. Co.* v. *Messino*, 33 Tenn. 220; *Atlantic City* v. *Dehn*, 69 N. J. L. 233; *Stanley* v. *Steele*, 77 Conn. 688.)

*Borden H. Mills* for respondent. The vehicle in question was a public conveyance. (*Gassenheimer* v. *District of Columbia*, 26 App. Cas. [D. C.] 557; *Masterson* v. *Short*, 33 How. Pr. 481, 486; 37 L. R. A. [N. S.] 619, n.; *Primrose* v. *Casualty Co. of Am.*, 19 Penn. Dist. Rep. 471; 232 Penn. St. 210; Huddy on Automobiles [4th ed.], 44, 418, 419, 476; 5 Am. & Eng. Ency. of Law [2d ed.], 481; *Fidelity & Casualty Co.* v. *Joiner*, 178 S. W. Rep. 806; 10 Corpus Juris, 607, 608; *Donnelly* v. *Philadelphia, etc.*,

*Ry. Co.,* 53 Penn. Super. Ct. 28; *Terminal Taxicab Co.*
v. *Kutz,* 241 U. S. 252; Van Zile on Bailments & Carriers
[2d ed.], ch. 2, § 407; Dobie on Bailments & Carriers, 519;
*Mason-Seaman, etc.,* v. *Mitchell,* 89 Misc. Rep. 230;
*Fonsler* v. *Atlantic City,* 70 N. J. L. 125.) Such vehicle
was provided by a common carrier. (*Burke* v. *State,* 64
Misc. Rep. 558; *O'Rourke* v. *Bates,* 73 Misc. Rep. 414;
General Ordinances, City of Albany, ch. 14, §§ 5, 14; 5
Am. & Eng. Ency. of Law [2d ed.], 481; Huddy on Auto-
mobiles [4th ed.], 414, 420; *Dunn* v. *New Amsterdam
Casualty Co.,* 141 App. Div. 478; *Primrose* v. *Casualty Co.
of America,* 19 Penn. Dist. Rep. 471; 232 Penn. St. 210;
*Yellow Taxi Co.* v. *Gaynor,* 82 Misc. Rep. 97; 1 Wyman
on Public Service Corp. 407; 1 Moore on Carriers, 60;
*Bonce* v. *Dubuque,* 53 Iowa, 278; *Van Hoefen* v. *Columbia
Taxicab Co.,* 179 Mo. App. 591; *Lloyd* v. *Haugh, etc.,* 223
Penn. St. 148; *Stiner* v. *Metropolitan St. Ry. Co.,* 84 N. Y.
Supp. 285; *Dwinelle* v. *N. Y. C. R. R. Co.,* 120 N. Y.
117; *Gillingham* v. *Ohio R. R. Co.,* 35 W. Va. 588; 9
Columbia Law Review, 177; 10 Columbia Law Review,
353; *Carlton* v. *Boudar,* 118 Va. 521.) Such vehicle was
was in no sense a private conveyance, nor was it pro-
vided by a private carrier. (*Dwinelle* v. *N. Y. C. R. R.
Co.,* 120 N. Y. 117; 1 Moore on Carriers, 4; *Terminal
Taxicab Co.* v. *Kutz,* 241 U. S. 252; *Yellow Taxicab Co.* v.
*Gaynor,* 82 Misc. Rep. 94; *Munn* v. *Illinois,* 94 U. S. 113.)

ELKUS, J. This action is upon a policy of accident
insurance issued by the defendant to the plaintiff. By
article VII of the policy it is provided that the amounts
specified to be paid by other articles shall be doubled if
the bodily injury is sustained by the assured "*while in
or on a public conveyance (including the platform, steps and
running-board thereof) provided by a common carrier for
passenger service.*" The stipulated facts show: On Octo-
ber 8, 1915, the plaintiff was at the corner of State and
Pearl streets in the city of Albany in front of the office of

the Yellow-Taxi Service, Inc.; a cab belonging to this company was standing at the curb, awaiting engagement. Plaintiff desired to go to the Elks Club on State street near Eagle street and engaged this cab, which was operated by a chauffeur employed by the taxi company.  The plaintiff entered the cab, accompanied by a friend, and gave the chauffeur the direction to take them to the Elks Club, arrived in front of the club and, as the plaintiff attempted to alight he stumbled and fell and sustained a fracture of the right patella or knee cap and was seriously injured.

The question before this court is whether the taxicab in which the plaintiff received his injury is a public conveyance provided by a common carrier for passenger service within the meaning of the policy sued upon.

The stipulated facts show that the Yellow Taxi Service, Inc., operate a number of Ford (automobile) cars differing in no way from other Ford cars except that they are equipped with a taximeter and that the bodies of the cars are painted yellow, and bear a serial number.  There was space for additional passengers in the taxicab, but the plaintiff and his friend had the sole and exclusive occupation until his journey's end.

The Yellow Taxi Service, Inc., was organized under the Business Corporations Law (Cons. Laws, ch. 4) with the purpose, among others, " to conduct a general livery business by means of automobiles plying for hire in the streets of any city or village within the state or on the roads and highways of the state generally, or elsewhere, whether such vehicles are propelled by steam, gasoline, electricity or any other kind of motive power for the transportation of passengers or goods."

Pursuant to the authority granted by this charter, some taxicabs of the Yellow Taxi Service, Inc., were sent to stands at various places in Albany awaiting applicants for their services, and to do a so-called " cruising " business seeking and accepting " fares " who may signal to them when they are unengaged.  Others awaited calls

at the garage of the company. Apparently, the chauffeur was the authorized agent of the company to accept a " fare " and was bound to accept every proper " fare " presented under the provisions of chapter 14, sections 5 and 14, of·the General Ordinances of the city of Albany. This ordinance imposed a penalty of $10 on the owner or driver of any conveyance used for the carrying and transportation of passengers for hire, other than street cars, who should refuse or neglect to convey any person to any place, within certain limits around the city.

The term " common carrier " is not of statutory origin. Its meaning is to be found in the history of the law of the early days when means of travel and communication were slow and uncertain and innkeepers and carriers were restrained from the robbery and ofttimes murder of those to whom they offered their hospitality or service, only by the imposition of heavy penalties and responsibility for the safekeeping of their patrons' goods and persons. ( *Nugent* v. *Smith*, L. R. 1 C. P. D. 423; *Coggs* v. *Bernard*, 2 Ld. Raym. 909, 1 Smith's L. Cas. 199.)

With the development in traveling facilities from the post horse to the chaise, the stage coach and to the modern railroad train or steamboat, the term " common carrier " has been applied to each new development catering to the public generally, and the strict rules of the old law have been relaxed but little, for with the development came new dangers of a mechanical sort inherent to swiftly-moving machines. ( *Palmer* v. *Prest., etc., D. & H. Canal Co.*, 120 N. Y. 170; *Ingalls* v. *Bills*, 9 Metc. 1; *Hegeman* v. *Western Railroad Corpn.*, 13 N. Y. 9.) To-day, as is practically conceded by counsel for both parties in the instant case, the term " common carrier " should be applied to the " jitney bus," and to-morrow, in a proper case, it may well be that it may be applied to that most recent device for eliminating the fetters of distance, the aeroplane, presenting as it does new dangers unknown to the average man which can only be decreased by a high

degree of care upon the part of those in control of the mechanism which operates them.

Definitions are fundamental. Their application to any given state of facts, therefore, must be by analogy. Moore on Carriers (2d edition, page 19) defines a common carrier as " one who, by virtue of his business or calling undertakes for compensation to transport personal property from one place to another either by land or water and deliver the same for all such as may choose to employ him; and every one who undertakes to carry and deliver for compensation the goods of all persons indifferently, is, as to liability, a common carrier."

A common carrier was defined, in *Gisbourn* v. *Hurst* (1 Salk. 249), to be " any man undertaking, for hire, to carry the goods *of all persons indifferently*," and in *Dwight* v. *Brewster* (1 Pick. 50), to be " one who undertakes, for hire, to transport the goods of *such as choose to employ him* from place to place."

In *Bank of Orange* v. *Brown* (3 Wend. 161), Chief Justice Savage said: " Every person who undertakes to carry, for a compensation, the *goods of all persons indifferently*, is, as to the liability imposed, to be considered a common carrier." " The distinction between a common carrier and a private or special carrier is, that the former holds himself out *in common*, that is, to all persons who choose to employ him, as ready to carry for hire; while the latter agrees, in some special case, with some private individual, to carry for hire." (Story on Contracts, sec. 752-a.) The employment of a common carrier is a public one, and he assumes a public duty, and is bound to receive and carry the goods of any one.

" On the whole, " says Prof. Parsons, " it seems to be clear that no one can be considered as a common carrier, unless he has, in some way, held himself out to the public as a carrier, in such manner as to render him liable in an action if he should refuse to carry for any

31

one who wished to employ him." (2 Pars. on Cont. [5th ed.] 166, note; *Allen* v. *Sackrider*, 37 N. Y. 341, 342.)

In the early days there was no common carrier, except of goods. Common carriers of persons as such were unknown until recent times. Travel was unusual and he who traveled did not travel in wagons or conveyances furnished by a common carrier. Thereafter, the term " common carrier " acquired a broader meaning and now applies to one who carries passengers as well as one who carries goods, either when he carries the passenger and his merchandise or baggage or when he carries a traveler without his goods. (*Bretherton* v. *Wood*, 3 B. & B. 54; *Nolton* v. *Western Railroad Corp.*, 15 N. Y. 444.)

The distinction as to liability of a carrier of goods and of passengers is illustrative. Chief Justice MANSFIELD said: " For the goods the carrier is answerable in all events; but he does not warrant the safety of his passengers. His undertaking to them goes no farther than this — that as far as human care and foresight can go he will provide for their safe conveyance." (*Christie* v. *Griggs*, 2 Camp. 79; *Camden & A. R. R. & Transp. Co.* v. *Burke*, 13 Wend. 611, 616; *Hollister* v. *Nowlen*, 19 Wend. 234, 236.)

This distinction in liability arises out of the difference in control exercisable over human beings and mere goods.

In *Jackson Architectural Iron Works* v. *Hurlbut* (158 N. Y. 34, 38) this court held that it was not error to refuse to instruct a jury that one whose business is that of a general truckman, whose particular specialty was moving heavy machinery, for which he kept and maintained a large number of trucks and horses and necessary help for the transaction of this business was not a common carrier. Judge O'BRIEN, who wrote the opinion of this court, said: " A common carrier is one who, by virtue of his calling, undertakes, for compensation, to transport personal property from one place to another for all such as may choose to employ him, and every one who under-

takes to carry for compensation *the goods of* all persons indifferently is, as to liability, to be deemed a common carrier." (*Jackson Architectural Iron Works* v. *Hurlbut*, 158 N. Y. 34 at 38; *Bank of Orange* v. *Brown*, 3 Wend. 158; Schouler on Bailments & Carriers [2d ed.], 351; Story on Bailments, secs. 495, 496; 2 Kent's Commentaries [4th ed.], pp. 598, 599; 2 Parsons on Contracts, 165, 175; Angell on Carriers, 870; *Allen* v. *Sackrider*, 37 N. Y. 341; *Lough* v. *Outerbridge*, 143 N. Y. 271.)

If we omit the words " the goods of," we find a perfect definition of a common carrier of persons and, when the history of the change of common carriers from goods to persons is traced, we find that reason, custom and common sense support this definition.

Does not the term " common carrier " have a different significance than the narrow definition given by Moore, to the layman who negotiates an insurance contract, by which he is to be paid a specified sum provided his injury takes place while traveling in a public conveyance provided by a common carrier? The insurance contract certainly meant something and its meaning was not limited by the old definition of " common carrier." Its indemnity was for personal injuries. Did not " common carrier " include in the mind of the assured and in the mind of the ordinary man, a street car, busses, jitneys, taxicabs, and all means of conveyance which are publicly offered to travelers whether accompanied by their luggage or not, regardless of whether the offer is made by a carrier of goods and persons or merely of persons?

The certificate of incorporation of the company owning the taxicab in question states that it is organized for the transportation of passengers or goods. Why, then, is it not a " common carrier " within the meaning of the insurance policy in the instant case? That the company itself was a common carrier within the meaning of the policy, there can be, I think, little doubt.

The tendency of the law is to eliminate distinctions

which no longer continue in the mind of the ordinary man. The Supreme Court of the United States well says in *Little* v. *Hackett* (116 U. S. 366, 379), FIELD, J.: " There is no distinction in principle whether the passengers be on a public conveyance like a railroad train or an omnibus, or be on a hack hired from a public stand in the street for a drive." And in distinguishing the passenger in a public conveyance from the owner, said: " The owner of a public conveyance is a carrier, and the driver or the person managing it is his servant. Neither of them is the servant of the passenger, and his asserted identity with them is contradicted by the daily experience of the world." (FIELD, J., *Little* v. *Hackett*, 116 U. S. 366, 375.)

The modern meaning of common carrier is well expressed in the California Code as follows: " Every one who offers to the public to carry persons, property or messages, excepting only telegraphic messages, is a common carrier of whatever he thus offers to carry." (Calif. Civil Code, sec. 2168.)

The crux of the present case, therefore, narrows down to the point whether the taxicab furnished to the plaintiff in which he was riding and from which he was alighting. at the time of his injury was a public conveyance. If this be so, and the company furnishing it being a common carrier, the conditions of the policy providing for double indemnity are fulfilled.

The stipulated facts show that the Yellow Taxi Service, Inc., sent its taxicabs, equipped with taximeters, on the streets of Albany under the control of their chauffeurs to wait at stands or when traveling upon the streets and unemployed to transport any applicant for their service. The city ordinance clearly applies to them and penalizes both the chauffeur and the owner for any refusal to accept any proper applicant. Certainly the owners and drivers of purely private conveyances cannot be subjected to this penalty.

In *Primrose* v. *Casualty Co.* (232 Penn. St. 210, 214) it was said: " The words 'public conveyance provided for passenger service and propelled by gasoline' are to receive a reasonable meaning. All conveyances are either for public or private use. The automobile in the case at bar was not for merely private use. It belonged to a company which, as already stated, was engaged in the business of hiring automobiles for general public use. The use of no one of its machines was limited to any particular person, but any one able to pay the price for the privilege of riding in it, while it was under the control of and being operated by one of the company's employes, could do so. In some cases a fare per head was charged for the use of the machine for a stipulated time or for a specified journey; in other instances there was a charge for the use of the car of so much by the hour, and under this arrangement the deceased and his friends hired the car in which they were riding.     *     *     *."

The facts in the *Primrose* case were very similar to those in the case at bar and while it may be that that decision was too broad, in that it applies to a rented automobile under contract for a day or an hour or other specified time, it is clear that a taxicab equipped with a taximeter " cruising " along the streets of a city offering its services to the first comer, looking for " fares " to any place within the city limits at a fixed price to be controlled by the distance and recorded by a taximeter is a public conveyance within the usual concept of the term and also legally. Its character does not change by reason of some passer-by accepting the offer publicly made of its services. It was a public offer of conveyance which he accepted and the instrument of conveyance must remain as to him a public conveyance to his journey's end or his dismissal of the cab.

There does not seem to be much reason in the argument that, if all the seats were occupied, the conveyance was a public one, but that if only two or three of the four

available seats were occupied, it was a private conveyance. The fact that, by custom, when engaged by a "fare," taxicabs proceed under the direction of that "fare" to the destination desired by him and accept no other passengers does not change the means or character of the conveyance. The custom is the result of business convenience, inherent in the successful conduct of the taxicab business. Those employing taxicabs desire greater speed and convenience in transacting their business or journey than is furnished by the ordinary street car or jitney bus. This means of speed and convenience is offered by the taxicab and that is what warrants its higher rate of charge. (*Jackson Architectural Iron Works* v. *Hurlbut,* 158 N. Y. 34.)

The exclusive right to use does not alter the situation. In *Campbell* v. *Perkins* (8 N. Y. 430, 435), in which the owners of a canal boat carrying passengers and goods for hire, chartered a boat bearing their name to another company for a single trip, a passenger, apparently knowing nothing of the charter party, engaged passage on the boat and during the trip from New York to Albany some of his luggage was lost and he brought action against the owner. It was held "that the defendants as owners of the boat were liable to the plaintiff *in their character as common carriers,* notwithstanding there was no privity of contract between them and the plaintiff; that they had a duty to perform *as common carriers* and were liable for their failure to perform such duty."

An express train which may not be filled to capacity, passes by ordinary stations, even cities, where passengers may be waiting, willing and anxious to board it, but its services belong to those few persons who entered it for specific destinations without intermediate stop. Passengers often pay an extra fare to travel on these trains. Inns cannot be compelled to fill every room to capacity, nor Pullman companies to let unoccupied berths in sections already rented. These limitations do not

alter their public characters. (*Jencks* v. *Coleman,* 2 Sumner, 221.)

This would make it appear that the test of the meaning of " public conveyance " is not whether all the seats are occupied or whether a passenger takes one or more seats in a taxi, paying for those he himself does not occupy. The test is the public offer of conveyance at a fixed fare to all.

The judgment of the Appellate Division and order appealed from should be affirmed, with costs.

HISCOCK, Ch. J. (concurring). While plaintiff was alighting from a taxicab in the city of Albany he met with an accidental injury. At the time he held a policy issued by the defendant insuring him against injury through accidental means which provided that the amount to be paid in case of such an injury should be doubled if it was sustained by the assured " while in or on a public conveyance * * * provided by a common carrier for passenger service." By the judgment which has been recovered for double payment under this clause, the question has been presented whether the taxicab in which plaintiff was riding was a public conveyance provided by a common carrier for passenger service. The important facts by which this question is to be determined are as follows:

The Yellow Taxicab Service, Incorporated, operated taxicabs in the city of Albany. It had a garage and part of its service was rendered by taxicabs on calls sent in to the garage. In addition to this, however, it stationed taxicabs in various public places in the city where they stood awaiting and desiring engagement by any person who was free from reasonable or legal objections and was able to pay the required fare. The taxicab in which plaintiff was riding was one of the latter class. When a person engaged one of these cabs on a public stand it became subject to his orders as to destination and duration of service and the proffered engagement of any other

person would not be accepted while it was engaged in carrying out the first engagement, even though there was room for other people. The company did not put in use the same number of cabs each day. It pursued with them no definite routes, had no schedule of any kind, the fares were fixed by it and were not in any way controlled or governed by the public service commission. There was in the city of Albany an ordinance which required a license fee for use of taxicabs and which imposed a penalty upon any driver who refused to convey any person within certain limits within the city and which limits included the service being rendered for plaintiff at the time of his accident. The taxicab company had taken out, and was operating, under such a license.

We think that upon these facts it has been properly held that the taxicab was a public conveyance and that the company which operated it was a common carrier.

In answer to the first question involved, it is difficult to see how the taxicab in use on this occasion can be regarded as other than a " public conveyance." We are not now considering the status of a cab which might be ordered by special call from the garage, as a conveyance might be ordered from a liveryman, but the case of one which was stationed upon the street for the purpose of securing business from any one who might come along who seemed to be an acceptable customer. Such a conveyance, stationed in a public place awaiting and accepting for carriage, subject to reasonable regulations which will be discussed later, any member of the public who desired it, and upon terms apparently uniform and common to all, seems clearly to be a public conveyance. It is a public conveyance because indiscriminately it conveys the public. It is not private because its use is not limited to certain persons and particular occasions or governed by special terms. If any persuasive authority is needed for this proposition it is found in the case of *Terminal Taxicab Co., Inc., v. Dist. of Columbia* (241 U. S.

252, 253).  This case considered a statute relating to public
utilities which latter were defined as including "every cor-
poration  *  *  *  controlling or managing any agency or
agencies for public use for the conveyance of persons,"
and it was held that the law applied to a company which
carried passengers to and from hotels and railroad terminals,
respectively, under contracts which gave it the exclusive
right to solicit taxicab business from persons at either
place.  This was only part of the public and it was
assumed that there was the same feature of control by
the first person engaging a taxicab as appears in this
case, yet it was held that such cabs were for "public
use for the conveyance of persons."

We then come to the remaining question whether the
Yellow Taxicab Service was a "common carrier" for
passenger service in respect of the taxicab in which
plaintiff was riding at the time he received his injuries.
And again in this connection it may be stated that the
status of the company in respect of such a cab and in
respect of those stationed in its garage and employed
by and on special call for special purposes is not necessarily
the same.  I think and for the purposes of this discussion
shall assume that as to such latter taxicabs it would
more nearly have the character of a liveryman and
would not be a common carrier.  (*Stanley* v. *Steele,*
77 Conn. 688;  *McGregor* v. *Gill,* 114 Tenn. 521;  *Siegrist* v.
*Arnot,* 86 Mo. 200, 205;  *Erickson* v. *Barber,* 83 Iowa, 367;
*Copeland* v. *Draper,* 157 Mass. 558;  *Conn* v. *Hunsberger,*
224 Penn. St. 154.)

This immediate question will be discussed on the theory
that the taxicab which was used by the plaintiff was sta-
tioned upon a public street and in a public place intended
to serve and serving indiscriminately those of the pub-
lic who might desire it under common conditions and
upon common rates of fare.  I am aware that it will be
contended by the appellant that this is not an accurate
statement of the situation because the services were

subject to certain conditions, limitations and restrictions and, therefore, there will be considered first these limitations for the purpose of determining whether in any substantial or legal sense they did change the status of the taxicab as I have stated it to be.

It is said that the taxicab company did not at all times furnish the same number of cabs for public service, that it would not receive for carriage persons subject to certain objections, that it fixed its own rates of fare and moved from no fixed termini on fixed routes or regular schedule, and lastly that when it had received for carriage one individual or one group of individuals it was not open to other engagement until that trip had been finished. It is also said in attempted solution of this question that the company operating the taxicab would not be subject to action if it refused to accept a passenger and that it was not subject to the high measure of liability which attaches to a common carrier. So far as concerns these last propositions they seem to me to involve an argument which moves backward and which attempts to determine a status by consideration of results which flow from the status if established. The liabilities which have been mentioned cannot be regarded as creating the status of a common carrier; they arise from the condition of being a common carrier if that is once established.

I do not think that any of the special conditions and limitations which have been mentioned destroy or impair the fundamental and substantial character of the operator of the taxicab in question. We can easily see that there is nothing decisive in the facts that the company did not at all times operate the same number of cabs, that it rejected undesirable persons, as those intoxicated or diseased, proposing to use its conveyances and that it fixed its own rates of fare. These are all privileges commonly exercised by common carriers subject to statute or contract and to the modern device of regulation

by public service commissions and except for such control or regulation even a railroad company would not be regarded as losing or shedding its character of a common carrier if from day to day it varied the number of its trains, rejected undesirable persons as passengers or fixed its fares.

Neither has it ever been regarded or held to be indispensable to the creation of the status of common carrier that its conveyances should move between fixed termini upon fixed routes. It is true that until modern times common carriers, taking the ordinary stage coach as an illustration, did ordinarily thus move, but no case has been cited or found which holds that such characteristics are indispensable. In fact the contrary has been held. (*Parmelee* v. *Lowitz,* 74 Ill. 116; *Pennewill* v. *Cullen,* 5 Harr. [Del.] 238.) It has even been held that fixed charges are not an essential attribute of a common carrier of goods. (*Jackson Agr. Iron Works* v. *Hurlbut,* 158 N. Y. 34.)

This leaves the limitation upon service which is most urgently emphasized by appellant, namely, the one that when the taxicab had been engaged by one member or group of members of the public no other person was received for carriage even though room was still left in the conveyance, until the first trip had been completed. This in our judgment did not take defendant out of the character of common carrier. As has been said in a thoughtful discussion of this general question in respect of this particular feature, " It would seem that in every case of general obligation to serve, the custom of service qualifies the nature of the duty." (Columbia Law Review, Dec. 1917, pp. 710, 713.) The custom under which, as we know by ordinary observation, a taxicab, such as that in which plaintiff was riding, after having accepted from the public an individual or a group of individuals refuses to receive others is not only well-nigh universal but is almost indispensable. Moving on no

definite route, but having taken passengers for delivery at one destination, it could not well or conveniently discharge its service to them if it received other individuals desiring to go to another destination or in an opposite direction.   It does not absolutely and unqualifiedly refuse to serve these latter people but simply relegates them to service by another conveyance.   Its refusal to carry the public goes no farther than conditions and limitations which it can reasonably and conveniently make and more than this a common carrier is not required to do.

While a company operating sleeping cars is not a common carrier, it still is engaged in rendering public and common service and it has been held that such a company is not compelled to sell an upper berth, although unoccupied, when the entire section has been engaged by another occupant.   (*Searles* v. *Mann Boudoir Car Co.,* 45 Fed. Rep. 330; *Nevin* v. *Pullman P. C. Co.,* 106 Ill. 222.)   An hotelkeeper is not compelled to accommodate a proposed guest by setting up an extra bed in a room already engaged although there is plenty of space in such apartment for such extra bed.   (*Browne* v. *Brandt,* 1902, 1 K. B. 696.)   And as was held in the case of *Terminal Taxicab Co., Inc.,* v. *Dist. of Columbia* (241 U. S. 252), above cited, the status of a taxicab as a " public " conveyance is not impaired by the observance of a custom or regulation such as we are now commenting on, and of course the feature of indiscriminate public service, there said not to be impaired by such regulation, is the essence of and foundation upon which rest the character and status of a common carrier.

Therefore as we think, subject to these particular features which regulated without destroying its service, the owner of this cab was engaged in indiscriminately carrying such members of the public as might apply on common terms and it came within the definition of a common carrier.

As we well know the vocation of a common carrier of

passengers is an evolution from that of a common carrier of goods. Classical definition of the latter is " any man undertaking for hire to carry the goods of all persons indifferently." (*Gisbourn* v. *Hurst,* 1710, 1 Salk. 249.) And again, " To bring one within the description of a common carrier he must exercise it as a public employment; he must undertake to carry goods for persons generally and he must hold himself out as ready to engage in the transportation of goods for hire as a business, not as a casual occupation *pro hac vice.*" (Story on Bailments, § 495.)

In extension of this definition the common carrier of passengers has been with accuracy defined as " One who undertakes for hire to carry all persons indifferently who may apply for passage. To constitute one a common carrier it is necessary that he should hold himself out as such. This may be done not only by advertising but by actually engaging in the business and pursuing the occupation as an employment." (Thompson on Carriers of Passengers, p. 26, note 1.)

The meaning and extent of these definitions of a common carrier are emphasized by recognized definitions of a private carrier. " Private carriers for hire are such as make no public profession that they will carry for all who apply, but who occasionally, or upon the particular occasion undertake for compensation to carry the goods of others upon such terms as may be agreed upon. They are not common carriers because they do not make the carriage of goods for themselves or others a business and they do not hold themselves out to the public as ready and willing to carry indifferently for all persons any particular class of goods or goods of any kind whatever." (Hutchinson on Carriers [3d ed.], § 35.)

The learned counsel for the appellant in his earnest and thorough argument for a different view calls to our attention many cases asserted to lead to a different conclusion. Some of these are in our opinion so readily

distinguishable from the present one that it is unnecessary to comment on them at length. There are, however, cited four cases which merit brief comment for the purpose of distinguishing them from the present case.

In *Darnell* v. *Fidelity & Casualty Co.* (Sup. Ct. of Tenn., 46 Insurance L. Journal, 523) the taxicab involved had been employed on a special call to the garage and the business of the owner and operator of it was described " as in the nature of a livery stable business." As has already been indicated we think that the status of such a conveyance may readily be distinguished from that of the conveyance in which plaintiff was riding.

*Oppenheimer* v. *Maryland Cas. Co.* (70 Penn. Super. Ct. 383) dealt with an automobile which was hired under special contract from one who so far as appears kept a garage and did not station his cars upon the street for public service, and the court disposed of the case on the theory that it involved and was controlled by the principles applicable to a livery stable keeper.

The case of *City of New York* v. *Hexamer* (59 App. Div. 4) involved the consideration of a licensing ordinance and it was simply held that the right to license the business of hackmen and to fix a license did not authorize the passage of an ordinance imposing a license fee upon a person engaged in conducting a livery stable in New Jersey and who at intervals sent his carriages into the city of New York for the purpose of meeting the steamers of the Trans-Atlantic Line and conveying the passengers to their respective destinations. It was the view of the court that such a person so conducting a livery stable and sending forth his hackmen was not " a public hackman."

The case of *Brown* v. *N. Y. C. & H. R. R. R. Co.* (75 Hun, 355) involved the question whether an owner of two carriages with teams of horses which were used in the transportation of passengers about the city of Niagara Falls was a common carrier within the meaning

of a statute regulating the admission of persons upon the station premises of the defendant for the purpose of soliciting custom. There are contradictory expressions in the opinion upon the question of common carrier. It is stated that the plaintiff's business did come within the general definition of a common carrier but that ordinarily in speaking of common carriers, hackmen were not understood to be included therein. The important fact in respect of the decision, however, is that the question whether the plaintiff was a common carrier or not was not necessary to the disposition of the case which proceeded to the same conclusion whether he was or was not.

On the other hand, we think that there is quite an abundance of decisions, some of them accompanied by well-considered opinions, which support the view that the operator of the modern public taxicab or of its prototype, the old-fashioned public hack, was and is a common carrier. (*Cushing* v. *White*, L. R. A., 1918 F, 463; *Carlton* v. *Boudar*, 118 Va. 521; *Primrose* v. *Casualty Co.*, 232 Penn. St. 210; *Ga. Life Ins. Co.* v. *Easter*, 189 Ala. 472; *Fidelity & Casualty Co.* v. *Joiner*, [Texas] 178 S. W. Rep. 806; *Lemon* v. *Chanslor*, 68 Mo. 341; *Lewark* v. *Parkinson*, 73 Kans. 553.)

We think also that the *Terminal Taxicab Co.* case, above cited, when carefully considered strongly tends to sustain the view which we have taken.

We, therefore, are led to the conclusion that the judgment appealed from should be affirmed, with costs.

CHASE, HOGAN, CARDOZO, McLAUGHLIN and CRANE, JJ., concur with ELKUS, J., and HISCOCK, Ch. J., concurs in opinion, in which all concur.

Judgment affirmed.