## FREIGHT AND PASSENGER TRANSPORTATION ·BY MOTOR VEHICLE WHICH REQUIRES NO LICENSE.

Probate Court of Montgomery County.

STATE OF OHIO V. J. J. THOMPSON.
STATE OF OHIO V. LAWRENCE NEIBLE.

Decided, December, 1926.

*Common Carriers—Are those Engaged in Transportation as a Public Employment—And not as a Casual Occupation.*

1. A motor truckman who has a written contract with a corporation to do its hauling, but at intervals does some hauling for his neighbors, his work for the corporation constituting more than 80 per cent. of his yearly earnings, is not a common carrier and is not liable to prosecution for failure to obtain a certificate of convenience and necessity from the Public Utilities Commission.

2. Neither is the owner of a Ford sedan, who is employed in a factory sixteen miles from his home, and drives back and forth in his machine, and in doing so carries for hire four of his neighbors, who are employed in the same factory.

*Albert H. Sharrer,* Prosecuting Attorney, and *Rolla M. Galloway,* Assistant Prosecuting Attorney, for plaintiff.
*Sigler & Denlinger,* for defendants.

ROUTZOHN, J.

The defendants in the above entitled cases are charged with the violation of the motor transportation law of Ohio, as contained in several sections (614-84 to 614-102) of the General Code, the penal section thereof (Section 614-100) providing, in substance, that every person who violates any provision of said law shall be deemed guilty of a misdemeanor and subject to a fine not exceeding one thousand dollars, or imprisonment in the county jail not exceeding one year, or both. .

The particular section, which defendants are charged with violating, is 614-87, which provides, in part:

"No motor transportation company shall begin to operate any motor propelled vehicle for the transportation of persons or property, or both, for hire, between fixed termini or over a regular or irregular route in this state, without

first obtaining from the public utilities commission a certificate declaring that public convenience and necessity require such operation."

Prosecution for the violation of this provision has been instituted by representatives of the public utilities commission against numerous companies and individuals, in this county and elsewhere; and, as will be noted hereafter, this law applies to individuals who own or operate motor propelled vehicles as well as to incorporated companies or partnerships.

The Thompson and Neible cases were tried and submitted with a view to determining the criminal responsibility of these and other defendants whose cases are pending in this court, as all are analogous in that they involve the same legal questions based on similar alleged violations.

Thompson is charged with transporting property for hire without the certificate of public convenience and necessity, while Neible is charged with conveying persons for hire.

The evidence in each case is undisputed and both defendants admitted that no application has been made by them for said certificate.

Thompson is the owner and operator of a motor propelled vehicle (a truck), with which he transports property for hire.  The particular instance with which he was charged by the prosecution was that of hauling household goods for hire from Germantown to Dayton, a distance of approximately sixteen miles.  The defendant testified that he has a written contract with the National Leaf Tobacco Company of Dayton, Ohio, by the terms of which he hauls tobacco as directed by said company; that during the first eight months of 1926 he had received between two thousand and twenty-five hundred dollars for such services and that about eighty per cent of his entire income from hauling is thus received. He further testified that he also hauls for others under special arrangement, or contract, when same does not interfere with his hauling for the National Leaf Tobacco Company. He also stated that he does not hold himself out to the public to haul for the public indiscriminately and at all times; that

any one engaging him for such service must do so by special arrangement, or contract, and that he reserves the option of accepting such additional employment or refusing same; that not all of his time is occupied in hauling with his truck, but that part of his time he works as a carpenter, or on neighboring farms as a laborer.

Neible lives in Germantown, Ohio, and is regularly employed at the Delco, a large manufacturing plant in Dayton, Ohio.  He drives to and from his place of employment, a distance of approximately sixteen miles, in a Ford sedan, which he owns.  Four of his neighbors, residing in Germantown, who also work at the Delco, ride with him to and from work.  For this service, or accommodation, each one pays him at the rate of sixty cents per day, or round trip. Neible testified that he carried no other persons and that no one else can arrange to ride with him, unless a vacancy should occur by reason of one of his present passengers discontinuing the service.

To determine whether either, or both, of these defendants are guilty of the offense charged, it will be necessary to consider the several provisions of the motor transportation law and ascertain if the transportation of property in the one case and the conveying of persons in the other come within the purview of said law, requiring the owner thereof to first obtain a certificate of public convenience and necessity from the public utilities commission.

Section 614-84, in part, provides:

"The term 'motor transportation company' when used in this chapter, means every corporation, company, association, joint stock assocation, person, firm or co-partnership * * * owning, controlling, operating or managing any motor propelled vehicle not usually operated over rails, used in the business of transportation of persons or property, or both as a common carrier, for hire, under private contract or for the public in general, over any public highway in this state; provided, however, that the term 'motor transportation company' as used in this chapter shall not include any private contract carrier, as defined in Section 614-2, and shall not include, any person or persons, * * * in so far as they own, control, operate or manage a motor vehicle

\* \* \* and which are operated exclusively within the territorial limits of a municipal corporation, \* \* \* or in so far as they own, control, operate or manage motor propelled vehicles, the use of which is for the private business of the owners and the use of which for hire is casual and disassociated from such private business."

Section 614-2 contains the following:

"When engaged in the business of carrying and transporting persons or property, or both as a common carrier, for hire, in motor propelled vehicles of any kind whatsoever, under private contract or for the public in general, over any public street, road or highway in this state, except as otherwise provided in Section 614-84, is a motor transportation company.

"When engaged in carrying and transporting persons or property, or both, in motor propelled vehicles of any kind whatsoever, for hire, under private contract but not as a common carrier over any public street, road or highway, in this state is a private contract carrier."

Considering these two sections, it is obvious that the legislative intent, since the amendment in 111 Ohio Laws, page 513, was to grant the public utilities commission authority to regulate only such motor transportation as might be conducted by common carriers.

The Supreme Court of the United States and the Supreme Court of the state of Ohio, respectively, have recently held that a state is without power, by legislative fiat, to convert property used exclusively in the business of a private carrier, or to make the owner a public carrier; that legislative pronouncement that a business is affected with a public interest, is not conclusive of the question whether its attempted regulation on that ground is justified and is a subject of judicial inquiry; that it is the province of the courts to determine the limitations upon the power and authority of the Legislature to declare certain persons and firms to be common carriers, when the business conducted by them is such as not to bring them within the common law definition of common carriers. See *Michigan Commission* v. *Duke*, 266 U. S., 570; *Wolff Company* v. *Industrial Court*, 262 U. S. 522; *Hissem* v. *Guran, et al.*, 112 O. S., 59.

In *Red Ball Transit Company* v. *Marshall,* 8 Federal Reporter (2nd Series) 635, cited by counsel for the prosecution the U. S. Court of Appeals, referring to the Ohio motor transportation act, held:

"These legislative definitions are not helpful. In order to determne whether a given corporation is a motor transportation company, it is necessary to determine whether it is a common carrier, and this determination is left to rest as a question of fact under the common law."

In view of these authorities, in order to determine the responsibility of the defendants in the instant cases, we must look, not to the provisions contained in the legislative enactment, but to the comman law definition of common carrier.

Bouvier's Law Dictionary, Third Revision by Rawle, pages 553 and 561, respectively, give the following broad definitions:—

"One whose business, occupation, or regular calling it is to carry chattels for all persons who may choose to employ and remunerate him."

"Common carriers of passengers are such as undertake for hire to carry all persons indifferently who may apply for passage, so long as there is room, and there is no legal excuse for refusing."

Chief Justice Marshall, in the case of *Hissem* v. *Guran, supra,* in the opinion on pages 63 and 64 states:—

"That to constitute a common carrier there must be a dedication of property to public use of such a character that the product and service are available to the public generally and indiscriminately, that the carrier must hold himself ready to serve the public indifferently to the limit of his capacity."

On page 60 of the same opinion, the Chief Justice states:—

"If their business has not in fact been dedicated to the public use and service, any regulation would amount to a taking of private property for public use, and therefore be beyond the power of the state, unless compensation were first paid in money."

Counsel for the prosecution agree with this statement of

the Chief Justice and state that "the distinguishing characteristic of a common carrier at common law is that the carrier must hold himself out as willing to render service to the public generally and indiscriminately to the limit of his capacity."

Denying the applicability of the Hissem case, they cite the case of the *Red Ball Transit Co.* v. *Marshall, supra,* as analogous to the instant cases, and distinguishing private and public carriers.

This court has carefully considered the Red Ball decision and finds that on page 638, in distinguishing the Hissem and Duke cases, the Court states:

"A very different set of facts appear in relation to the Red Ball Transit Company. It is in the business of motor transportation. It advertises itself to be in that business. It holds itself out to contract for the carrying of certain classes of merchandise. * * * There is no proof that it denies hauling to any one who offers to contract. True, it makes the bare statement that it may decline any contract that may be offered. This is not persuasive, however, in view of the surrounding facts and circumstances."

The "surrounding facts and circumstances" referred to are also found in the opinion (page 636) as follows:

"The complainant company (Red Ball) is an Indiana corporation, having its principal place of business at Indianapolis, Ind., and organized for the purpose of carrying on a business, to-wit, among other things 'the transportation and contracting with others for transportation by motor truck or otherwise, of household furniture, or any other kind of personal property.' In pursuit of such business the company has and is engaged in the transportation of household goods and other personal property for hire, over the public highways and over irregular routes, from outside the state of Ohio to points within the state of Ohio * * * and from points within the state of Ohio to other points within the state of Ohio. In the pursuit of such business it has also established branch places of business, or offices, in the cities of Cincinnati, Dayton, Columbus, Toledo, and Cleveland, within the state of Ohio, and has advertised its business in the newspapers and otherwise."

Furthermore, the Court of Appeals in the Red Ball case,

in which the Red Ball Transit Co., as plaintiff, was seeking injunctive relief, very properly held that the burden was on it to prove that it was within the class not amenable to the Ohio Motor Transportation Act; that the Court of Appeals was without jurisdction to interfere, at least as to intrastate commerce, and the public utilities commission was willing to issue a certificate covering interstate traffic.

It would require quite a stretch of the imagination to compare the occasional hauling conducted by Thompson and the carrying of neighbors by Neible with the business con-. ducted by the Red Ball Company.

In addition, however, counsel for the prosecution cite cases to the effect that truckmen, wagoners, cartmen and others who undertake to carry goods for hire for the public generally and as a common employment are common carriers; that the fact that a truckman has no fixed charge does not alter the relation; and that it is not essential that they should be exclusively occupied as common carriers, but may combine it with other vocations. Citing: *Farley* v. *Lavary,* 107 Ky., 523; *Lloyd* v. *Haugh,* 223 Pa. St., 148; *Anderson* v. *Fid. & Cas. Co.,* 228 N. Y., 475; *Jackson Architectural Iron Works* v. *Hurlbut,* 158 N. Y., 34; *Fish* v. *Chapman,* 2 Ga., 349; *Terminal Cab Co.* v. *Kunz,* 241 U. S., 252.

This court will not attempt to distinguish these cases separately, but will state that they are not analogous, being based principally on suits to recover damages for injury to goods being hauled, wherein the plaintiffs whose goods were damaged, sought to hold defendants to the degree of liability imposed upon common carriers for safe delivery.

This is based on the principal that one who undertakes to carry for hire the goods of all persons, indiscriminately, is a common carrier, at least as to liability in damages.

The case of *Fish* v. *Chapman, supra,* cited by counsel for the prosecution, Nisbit, J., quoting Mr. Justice Story in his work on Bailments, Sec. 495, says:—

"It is not every person who undertakes to carry goods for hire that is deemed a common carrier. A private person may contract with another for the carriage of his goods and incur no responsibility beyond that of an ordinary

bailee for hire, that is to say, the responsibility of ordinary diligence. To bring a person under the description of a common carrier, he must exercise it as a public employment; he must undertake to carry goods for persons generally, and he must hold himself out as ready to engage in the transportation of goods for hire, as a business and not as a casual occupation *pro hac vice.*"

Thompson hauling tobacco for the National Leaf Tobacco Company is unquestionably a private contract carrier. By no method of logical reasoning can the conclusion be reached that the mere fact that he hauls goods for neighbors and acquaintances, who compensate him for his labor and the use of his truck, classify him as a common carrier. To be a common carrier is to place property and service at the command of the general public and the word common is used in connection with carrier to distinguish a public utility, or common carrier, from one who undertakes for hire on a particular occasion. The state, by legislative enactment, has the right to regulate public utilities, but it must not, and should not, however paternalistic the government may become, be permitted to convert private enterprise and property to public use.

To hold Thompson, because he occasionally hauls for others, and Neible because he takes his neighbors with him to their common place of employment, amenable to the motor transportation law, would amount to confiscation of property without just compensation and would encourage contempt and evasion of a practically uninforcible legislative enactment.

Both defendants, therefore, are dismissed.