In the Matter of PUBLIC SERVICE COMMISSION, Petitioner, against BLUE BUS SERVICE Co. INC. et al., Defendants.

Supreme Court, Special Term, Albany County, April 26, 1955.

*Kent H. Brown* and *Sidney Kabalkin* for petitioner.

*Sol Paseltiner* and *Leon A. Lauterbach* for defendants.

MacAffer, J.   The Public Service Commission brings this summary proceeding under section 63-g of the Public Service Law to enjoin the defendants from operating an alleged omnibus line in New York City unless and until said defendants shall have received a certificate of public convenience and necessity from the Public Service Commission.

The facts are not in dispute.   The defendant, Allied Motor Transportation Co. Inc. (Allied) is a domestic corporation organized under the Stock Corporation Law.   Its president and manager is the defendant, Pick.   The defendant, Blue Bus Service Co. Inc. (Blue Bus), is a domestic corporation organized under the Transportation Corporations Law.   Its treasurer and manager is the defendant, Pick.   Pick and his family are the majority stockholders of both corporations.   Both corporations share the same offices at 1560 Broadway, New York City, and also share certain employees.

Allied is in the bus brokerage business, i.e., it solicits and arranges to supply bus transportation for various groups and classes of the public on a charter basis, both in interstate and intrastate operations.   It holds a license to act as broker in interstate operations from the Interstate Commerce Commission.   It owns no buses.

Blue Bus owns seven buses, four of which were licensed as of June 4, 1954.   It does not solicit business from anyone.   All of its business is obtained from Allied on a contract basis.   Its buses are driven and serviced by its own employees.

Prior to August, 1953, the Bulova Watch Company (Bulova) had its offices and plant in New York City.   In that month Bulova commenced occupying a new plant in Jackson Heights, Queens County.   The entrance to the new plant was at 77th Street and 24th Avenue, a distance of 1,000 to 1,100 feet from the nearest certified bus line and the plant buildings were some 300 to 400 feet from the entrance.   The aforesaid nearest point of the bus line was at 77th Street and 25th Avenue.   The subway stop nearest to the new plant entrance was at Roosevelt Avenue

and 74th Street. The proof does not disclose the distance from the subway stop to the plant in blocks but one witness testified it was a seven minute bus ride.

Bulova had arranged with the certificated bus line for transportation of its employees from the subway stop to the bus stop nearest to the plant by means of passes paid for by Bulova. This arrangement proved unsatisfactory to Bulova. It thereupon solicited Allied for bus service.

On November 12, 1953, Allied entered into a written contract with Bulova to provide this bus service. The contract provided that Allied would arrange for the chartering of one forty-one-passenger parlor type bus to convey Bulova's employees from the subway stop as the starting point to the plant in the morning and return from the plant to the subway stop at the close of the work day. The contract provided that the bus was to be at the starting point between the hours of 7:45 A.M. and 8:45 A.M. and at the plant from 5:00 P.M. to 6:00 P.M. Bulova was to pay Allied $36 a day per bus.

On November 16, 1953, Allied entered into a written contract with Blue Bus for Blue Bus to furnish the buses for Allied to fulfill the contract with Bulova. Allied was to pay Blue Bus $25 a day for each bus. Both contracts were for one year commencing November 16, 1953. Bulova's contract was cancelable on thirty days' notice by either party. Blue Bus's contract was cancelable by Allied on thirty days' notice.

The buses were furnished by Blue Bus and driven by its employees. They would appear at the subway stop at the allotted time and wait for Bulova's employees to disembark from the subway. The riders were to be identified as Bulova employees by certain badges. When a bus was filled it departed for the plant and there left the riders off at the plant building inside the grounds. It returned empty to the starting point where the process was repeated. In the afternoon the process was reversed. Both buses usually made two trips at each operation in the morning and in the afternoon. Only Bulova's employees were conveyed and only those identified by the badge issued by Bulova. Approximately 250 to 300 of Bulova's employees were so accommodated daily. They paid no fares. Bulova paid Allied monthly and Allied paid Blue Bus the stipulated contract consideration. No part of this payment came out of the worker's pay. The operation was carried on five days a week, excepting holidays. The morning hour was strictly observed. The afternoon hour was often modified by Bulova by oral communication with Allied, particularly at holiday time.

The petitioner contends that the defendants are individually and collectively operating an omnibus line illegally, i.e., not having received a certificate of public convenience and necessity from the Public Service Commission. The defendants admit that they have no such certificate and deny that they are operating an omnibus line.

Subdivision 28 of section 2 of the Public Service Law defines an omnibus line as follows: "The term 'omnibus line,' when used in this chapter, means a motor vehicle or motor vehicles, including trackless trolleys as defined in the vehicle and traffic law, operated for the use and convenience of the public, usually along the same route or between stated termini, or on a fixed or stated schedule, carrying passengers for hire, and the property and equipment used in connection therewith. It shall include any motor vehicle so operated used in any intrastate business, notwithstanding such motor vehicle may be otherwise used in interstate commerce. It does not include hotel buses used exclusively for the transportation of patrons to local railroad or other common carrier stations, or other motor vehicles operated in what is commonly known as taxicab service, unless such service becomes, or is held out to be regular service between stated termini nor does it include motor vehicles used solely for the transportation of children to and from schools operated under contracts made pursuant to the provisions of the education law or vehicles owned or leased by school districts used solely for the transportation of children to and from schools."

Other pertinent provisions of the Public Service Law are as follows: Subdivision 29 of section 2 which provides: "The term 'omnibus corporation,' when used in this chapter, includes every corporation, company, association, joint-stock association, partnership and person, their lessees, trustees or receivers appointed by any court whatsoever, owning, leasing or operating or proposing to own, lease or operate an omnibus line."

Subdivision 1 of section 63-d which provides, among other things: "No omnibus corporation shall operate an omnibus line without first having obtained the permission and approval of the [public service] commission and its certificate of public convenience and necessity, after a hearing had upon notice."

Subdivision 13 of section 61 which provides, among other things, that: "No omnibus corporation shall * * * operate an omnibus line or omnibus lines upon any highway, avenue or street in the state except along a route and between stated termini as fixed and approved by the [public service] commission".

Section 66 of the Transportation Corporations Law provides in part, that: " no stage, omnibus line, stage route, motor vehicle line or route, nor any vehicle in connection therewith * * * shall be operated wholly or partly upon or along any street, avenue or public place in any city, nor shall a certificate of public convenience and necessity be issued therefor, until the owner or owners thereof shall have procured, after public notice and a hearing, the consent of the local authorities of such city ".

The parties agree that the criteria prescribed by subdivision 28 of section 2 of the Public Service Law for determining what is an omnibus line are whether motor vehicles are operated (1) for the use and convenience of the public, (2) usually along the same route or between stated termini or on a fixed or stated schedule and (3) carrying passengers for hire.

The defendants concede that the buses are being operated between stated termini but contend that they are not being operated on a fixed or stated schedule. In view of the concession that one of three disjunctive criteria prescribed in (2) is present here, i.e., operation between stated termini, it is immaterial and unnecessary to decide whether the buses are being operated " on a fixed or stated schedule." Parenthetically, the proof establishes that the buses were being operated " usually along the same route."

The issues for decision here, therefore, narrow down to whether the buses are being operated (a) for the use and convenience of the public, ([1] above) and (b) carrying passengers for hire ([3] above).

The petitioner contends that the buses are being operated for a particular segment of the public, i.e., Bulova's employees and, therefore, such service constitutes an element of omnibus operation within the statute. The petitioner relies on a quotation from the opinion in *Terminal Taxicab Co.* v. *District of Columbia* (241 U. S. 252) where the court said (p. 255): " No carrier serves all the public. His customers are limited by place, requirements, ability to pay and other facts. * * * The public does not mean everybody all the time."

The petitioner also relies upon the cases of *Anderson* v. *Fidelity & Cas. Co.* (228 N. Y. 475), *Maltbie* v. *Veterans Bus Corp.* (81 N. Y. S. 2d 622), *Public Service Comm.* v. *Grand Central Cadillac Renting Corp.* (273 App. Div. 595), *Public Service Comm.* v. *Columbo* (118 N. Y. S. 2d 873), *De Matteis* v. *McGolrick Realty Co.* (259 N. Y. 452), and *Surface Transp. Corp. of N. Y.* v. *Reservoir Bus Lines* (271 App. Div. 556).

The statement of the United States Supreme Court quoted above cannot be applied without a reference to the facts concerning which it was made. In that case the court was dealing with (a) taxicab service from the Washington, D. C., railroad station for all persons seeking such service and (b) transportation of any of the patrons of certain hotels. From the background of such facts there plainly appears an element of public service. Moreover, in that case the United States Supreme Court refused to enjoin the defendants from furnishing automobiles to those of the public who might contact their garage to engage such vehicles for transportation. The court held that such private contracting was not subject to regulation by the public authority.

The other cases cited by petitioner are not controlling here on the aspect of the case now being considered. They each are distinguishable on their facts from the case at bar. They each have elements of public use and convenience which are not present in the instant case.

The case of *Anderson* v. *Fidelity & Cas. Co.* (*supra*) involved a taxicab in public operation on the streets of a city; the cases of *Maltbie* v. *Veterans Bus Corp.* (*supra*) and *Public Service Comm.* v. *Grand Central Cadillac Renting Corp.* (*supra*) both involved transportation of all comers of a particular class of the public without previous contract. In the case of *Public Service Comm.* v. *Columbo* (*supra*) the buses received student passengers all along the bus route, no identification was required and fares were paid on entering. In the case of *De Matteis* v. *McGolrick Realty Co.* (*supra,* p. 453) the defendant had contracted with a realty company for a stipulated sum per week to convey " during every day in the week between the hours of 6:30 A.M. until 8:00 o'clock P.M. * * * prospects, past customers, salesmen, agents and other employees " of the realty company from the railroad station in Peekskill to the real estate development some distance away. In the case of *Surface Transp. Corp. of N. Y.* v. *Reservoir Bus Lines* (*supra*), passengers were picked up and discharged at thirteen regular stops all along the route, the transportation was for general purposes and no identification was required. These are some but not all of the features distinguishing the cited cases from the one at bar.

An element important to the classification of a common carrier is the holding out of the service to the public and concomitant therewith the solicitation of fares (*Anderson* v. *Fidelity & Cas. Co.,* 228 N. Y. 475, *supra*; *Matter of Motor Haulage Co.* v. *Maltbie,* 293 N. Y. 338; *Surface Transp. Corp. of N. Y.* v. *Reser-*

*voir Bus Lines,* 271 App. Div. 556, *supra).* Neither of such datum is present here.

The facts involved in this case more nearly parallel the facts with which the court was concerned in the case of *Utica-Clayville Bus Co.* v. *Waite* (233 App. Div. 297) wherein the court determined that a contract carrier was not an omnibus line. (See, also, *Palisi* v. *Yanarella,* 76 N. Y. S. 2d 211.)

Public convenience and necessity do not appear to be involved in the situation presented by the facts of the case at bar. This court is unable to perceive any public harm or injury if the enterprise of the defendants is not subjected to governmental regulation.

This court, therefore, concludes that the defendants are not within the first of the criteria mentioned. As hereinbefore noted, the defendants concede that the buses are being operated between stated termini, one of the elements of the second of the criteria to which reference has been made. Quite clearly, however, the defendants are within the third of the aforesaid criteria. However, the petitioner does not contend that the presence of less than all these criterion may constitute a violation of subdivision 28 of section 2 of the Public Service Law.

Since the motor vehicles here involved were not being operated for the use and convenience of the public, they are not required to be certificated under the law.

The petition is dismissed, without costs.

Submit order.